1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7

8  ROBERT W. WILSON and SONIA           NO:  11-CV-5130-TOR
   SILVA WILSON, husband and wife,
9                                        ORDER GRANTING IN PART AND
                        Plaintiff,       DENYING IN PART DEFENDANT'S
                                         MOTION FOR SUMMARY
10          v.                           JUDGMENT

11  BATTELLE MEMORIAL
    INSTITUTE, d/b/a PACIFIC
12  NORTHWEST NATIONAL
    LABORATORY,
13
                        Defendant.
14

15       BEFORE THE COURT is Defendant's Motion for Summary Judgment.

16  ECF No. 43.  This matter was heard with oral argument on September 7, 2012.

17  John G. Schultz and Brian G. Davis appeared on behalf of the Plaintiff.  Elizabeth

18  B. Kennar appeared on behalf of Defendant.  The Court has reviewed the motion,

19  the response, and the reply, and is fully informed.

20  //

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff Robert W. Wilson ("Wilson") worked for Defendant Battelle Memorial Institute ("Battelle") for four years, until he was terminated from his employment. He subsequently filed suit against Battelle alleging age discrimination under Washington State law, disparate treatment, and breach of implied contract. Presently before the Court is Battelle's Motion for Summary Judgment on all claims.

FACTS

Battelle hired Wilson as an Environmental Compliance Representative ("ECR") in November of 2007 at the age of 57 years old.[1] ECF No. 78 at 2-3. Alice Ikenberry was the manager of Wilson's department at the time Wilson was hired, and her supervisor was Roby Enge. ECF No. 78 at 3. Wilson was hired by a committee, including: Eric Damberg (the hiring manager), Alice Ikenberry, Jim Larson, and Paul Crane. *Id.* Ikenberry testified that Damberg expressed reservations about the aging workforce at Battelle, but Damberg did extend an offer of employment to Wilson. *Id.* Wilson was assigned to support the Facilities

---

[1] Prior to this job, Wilson worked at the Washington Department of Ecology's ("DOE") nuclear waste program. ECF No. 78 at 2. In that position with that employer, he received "above average" on every annual review since 1993. *Id.*

and Operations Directorate ("F&O") and assist the building managers in maintaining compliance with permitting and regulatory requirements. Defendant's Statement of Material Facts in Support of Summary Judgment ECF No. 46 ("Def. SMF") at ¶ 4. Mr. Wilson's employment was terminable at-will. Def. SMF at ¶ 5.

Later in 2007, Wilson's department named Mike Schlendler to the position of Associate Lab Director of Operations and Chief Operating Officer. ECF No. 78 at 4. Another Battelle employee recalls Schlendler talking about getting "new blood on the EHS team." *Id*. Roby Enge left his position and testified that "it appeared" new management was moving "old timers" out of the job. Shultz Decl., ECF No. 63, Ex. 4, 43:9-12. He was replaced by Cameron Anderson. *Id*. Ikenberry was told she had been "on the job too long" and was placed on a Performance Improvement Plan ("PIP"), transferred, and terminated. *Id*. She was replaced by Eric Damberg as Division Manager of Environmental Management Services. *Id*. In 2009, Damberg hired Michael Stephenson as manager of Environmental Planning and Permitting, who then became Wilson's direct supervisor. *Id*.; Def. SMF at ¶ 6.

In 2008 and 2009 Wilson received positive performance evaluations in his yearly Staff Development Review ("SDR"). Wilson Decl., ECF No. 73, Ex. 2-3. In 2010 Damberg and Stephenson asked Wilson to become manager of the P2 program, in addition to his ECR position. ECF No. 78 at 6; Def. SMF at ¶ 7.

1   Wilson was concerned about managing the workloads of both positions.  ECF No.

2   78 at 5.  In the P2 management position Wilson had difficulty with Battelle

3   employee Tiffany Papineau.  *Id*.  Wilson reported that she "screamed" at him and

4   told him that "older guys were hard to get along with" and that she preferred to

5   work with women instead of "older guys."  *Id*.  Wilson talked to his supervisor,

6   Stephenson, after these encounters and they agreed that Wilson should return to his

7   ECR position.  *Id*.  After the incident with Papineau, Wilson received a rating of

8   "improvement expected" on his 2010 SDR, while Papineau received an overall

9   rating of "achieved expectations."  ECF No. 78 at 7.

10         Wilson identified several accomplishments during his tenure as P2 manager

11  including coordinating environmental activities with other national laboratories,

12  meeting deadlines despite having responsibilities for 2 positions, and implementing

13  new recycling efforts.  *Id*.  Also, Wilson states that in 2010 he "likely saved"

14  PNNL from a Notice of Violation for Underground Tank Storage ("UTS").  *Id*.

15  Harold Tilden, another Battelle employee, worked with Wilson during the UTS

16  incident.  ECF No. 78 at 8.  Tilden testified that the agreement ultimately made

17  between Wilson and Ms. Monahan from the DOE was good and met the

18  regulation's requirements, and this was memorialized in an email that was cc'd to

19  Eric Damberg and Michael Stephenson.  ECF No. 78 at 8; Schultz Decl., ECF No.

20  64, Ex. 7; Schultz Decl., ECF No. 65, Ex. 15.  However, despite this email,

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

Damberg testified that if Tilden, instead of Wilson, had worked with the inspector, that Battelle would have "gained a more favorable outcome."  ECF No. 78 at 8; Schultz Decl., ECF No. 64, Ex. 6.  Tilden did not receive a reprimand for his involvement in the UST incident, while Wilson's involvement was rated as "improvement expected" at least in part due to this incident.  ECF No. 78 at 9; Wilson Decl., ECF No. 73, Ex. 4.  Battelle contends that Wilson misunderstood the direction by the inspector as to four acceptable methods to receive information, and instead mistakenly reported that a fifth method was acceptable to the DOE.  Def. SMF at ¶ 9.  In reliance on Wilson's misinformation, Battelle provided incomplete information to the DOE for four months.  *Id*.

Additional examples of positive job performance offered by Wilson in 2010 included 12 formal walkdowns and a summary of "P2 Pays" proposals.  ECF No. 78 at 9.  Also, Wilson received two performance achievement awards in June 2010.  Schultz Decl., ECF No. 65, Ex. 20.  One award was for outstanding performance when disposing of hazardous material and the second was for outstanding support while serving on an OPA Committee Member.  *Id*.  Battelle contends that these awards were taken into account when completing Wilson's SDR, and contributed heavily to Damberg and Stephenson's decision to give Wilson an "improvement expected" rating instead of the lowest "below expectations" rating.  Def. SMF at ¶ 16.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    Wilson was given an "improvement expected" rating on his SDR in 2010.

2    ECF No. 78 at 10.  This rating was based on unsatisfactory work performance by

3    Wilson during this period, including: incorrect reporting to the DOE for four

4    months, failure to support Building Managers, failure to engage with the operations

5    of his assigned facilities, dissatisfaction from Battelle's customers served by

6    Wilson, and failure to perform assignments.[2]  ECF No. 45 at 5; Def. SMF ¶ 12-13;

7    Rencken Decl., ECF No. 52; Allen Decl., ECF No. 56; Sharp Decl., ECF No. 55.

8    Wilson complained to his supervisors about what he perceived to be

9    "conflicting messages" in his SDR, including a lack of feedback "supporting Mr.

10   Stephenson's conclusions."  ECF No. 78 at 10.  Wilson alleges that, unlike

11   himself, his peers John Akers, Tom Moon, and John Barnett, did receive feedback.

12   ECF No. 78 at 11, Schultz Decl., ECF No. 65-66, Ex. 28-30.  Wilson set up a

13   meeting with the HR representative Casey Pittman and Eric Damberg to discuss

14   his concerns with his SDR.  ECF No. 78 at 11.  Damberg agreed to meet but he

15   was not willing to change the SDR, and he expressed concern with Wilson's

16   reaction as "indicative of the very behaviors which earned [Wilson] a rating of

17   _____

18   [2] The reasons given by Battelle for Wilson's poor job rating are listed in greater

19   detail in section II, infra, analyzing whether or not Battelle carried its burden to

20   establish that Wilson's work was not satisfactory.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

'improvement required.'"  *Id.*; Schultz Decl., ECF No. 66, Ex. 32.  Battelle contends that Damberg and Stephenson did identify areas that Wilson needed to improve in order to change his SDR rating and sent him a memorandum on December 1, 2010 outlining these areas for improvement.  Def. SMF at ¶ 19-20; Damberg Decl., ECF No. 51, Ex. B.

After the unfavorable SDR, Wilson contends that he tried to improve his performance and reported these activities to Stephenson.  ECF No. 78 at 11-12.  He issued a monthly summary of his activities for the F&O organization, tracked the permitting process for a new facility, and met with Stephenson and Damberg.[3] ECF No. 78 at 12.  Wilson also offered to send positive feedback from F&O to assist Damberg and Stephenson in determining if he was meeting expectations with regard to his interactions with F&O building managers.  *Id.*  Stephenson testified that he met with Wilson at least 19 times to "coach and counsel" him on expectations despite continuing disappointment from Wilson's customers.  Def. SMF at ¶ 23.  Battelle was receiving complaints from Wilson's customers that he was not performing his support role adequately, and was shifting his own

---

[3] Wilson took notes of these meetings and sent them to Stephenson for "red-line corrections."  ECF No. 78 at 12.  Wilson contends that Stephenson edited out positive feedback.  *Id.*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

1   responsibilities onto the building managers.  *Id*. at ¶ 24-31.  In the spring of 2011,

2   Facility Services Manager Reed Sharp asked for a new ECR representative, and

3   Division Manager Scott Allen, saw no value in purchasing Wilson's services as an

4   ECR.  *Id*. at ¶ 31.

5        Wilson was placed on a PIP on April 20, 2011.  ECF No. 78 at 13.  He was

6   asked to focus on "successfully establishing a positive relationship with the

7   Facility Management Services Manager and F&O Building Managers."  ECF No.

8   78 at 13; Stephenson Decl., ECF No. 53, Ex. B.  Wilson found these standards to

9   be "subjective and arbitrary" and maintains that he tried to receive further

10  clarification from management but it was not provided.  *Id*.  However, Battelle

11  offers an addendum to Wilson's PIP that was implemented on June 6, 2011 and

12  identified examples of Wilson's customer service that did not meet expectations.

13  *Id*.; Def. SMF at ¶ 40-41.

14       Wilson's PIP stated that "during the period of performance through July 29,

15  2011, management will evaluate your work to determine if expectations are being

16  fully met."  *Id*.  The PIP also stated that "failure to improve your work

17  performance and sustain a high-quality of effort may result in further disciplinary

18  action, up to and including your termination, at any time during this evaluation

19  period."  Stephenson Decl., ECF No. 53, Ex. B. Wilson asked for clarification

20  about possible termination during this period and contends that Stephenson

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

"repeatedly promised" that July 29 was the date he would be evaluated. ECF No. 78 at 14, 42. Stephenson scheduled a meeting for July 28, 2011 called "F&O Expectations" with attendees including Reed Sharp, Eric Damberg, and Robert Wilson. ECF No. 78 at 14. At this point, Wilson felt he was "targeted" for removal and was told by several other Battelle employees "oh, you are on the list."[4]

Wilson then went to Susan Rausch in the Employee Concerns Program. ECF No. 78 at 15. He reported that he thought he was being retaliated against for the interaction with Papineau and discriminated against due to his age and gender. *Id*.; Def. SMF at ¶ 38. Rausch responded that the SDR was based on facts and would not be rescinded, and that this decision came from management. *Id*. After these complaints from Wilson, Cameron Anderson organized a meeting with Wilson and Ms. Pittman, where Wilson was asked about the claims made in his meeting with Ms. Rausch. *Id*. Wilson continued to document his interactions with F&O in his own personal "Client Logs" which he sent to Stephenson.[5] *Id*. Battelle

---

[4] The Court has been unable to locate this deposition testimony cited by Wilson.

[5] Wilson goes into detail about how these logs contain 50 different interactions with customers and other meetings. ECF No. 78 at 16. Stephenson testified that he received the logs and that they became bigger. Wilson asserts that Stephenson "passed them off as [Wilson's] way to prove him wrong." ECF No. 78 at 17.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

continued to receive complaints from customers about Wilson's performance as their ECR. Def. SMF at ¶ 42-46.

On July 15, 2011, Stephenson and Damberg met with Wilson and provided a memorandum explaining that the PARC had convened the previous day and decided to terminate Wilson's employment. ECF No. 78 at 17. After reviewing the supporting documentation and the manager's recommendation, the PARC unanimously agreed with the recommendation to terminate Wilson for failing to meet the expectations of his position. Def. SMF at ¶ 48-49.

Battelle contends it did not fill Wilson's position or hire an additional ECR after he was terminated, partially due to the F&O reducing its purchasing of services previously provided by Wilson. Def. SMF at ¶ 51. Any assistance required by F&O is provided by Stephenson, and Wilson's remaining "25% of his time" is assumed by other individuals. Def. SMF at ¶ 52-53.

## SUMMARY JUDGMENT STANDARD

The court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

---

However, these are subjective assessments by Wilson of his own work and are thus unpersuasive to the Court on the issue of whether his work was satisfactory.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

## DISCUSSION

**I. Admissibility of Evidence**

In ruling on a motion for summary judgment, the Court may only consider admissible evidence. Fed. R. Civ. P. 56(e); *see also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). In its reply memorandum, Battelle argues that Wilson relies on unauthenticated, inadmissible hearsay, and conclusory allegations not based on personal knowledge. Specifically, Battelle claims that

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    Wilson fails to authenticate exhibits 15-21, 23-27, 32-36, 38-42, and 44-47 to

2    counsel's declaration and that the documents contain inadmissible hearsay.  Thus,

3    Battelle asks the Court to strike paragraphs 2, 3, 5, 7, 8, 9, and 10 of Wilson's

4    declaration.  Battelle also argues that deposition testimony of individuals not listed

5    as witnesses in the case should be stricken from the record.

6          First, the Court will not strike deposition testimony given by several

7    individuals in a separate and "unrelated" lawsuit.  The Ninth Circuit has explicitly

8    found that

9          [s]worn deposition testimony may be used by or against a party on summary
           judgment regardless of whether the testimony was taken in a separate
10         proceedings. Such testimony is considered to be an affidavit pursuant to
           Federal Rule of Civil Procedure 56(c), and may be used against a party on
11         summary judgment as long as the proffered depositions were made on
           personal knowledge and set forth facts that were admissible in evidence."
12

13   *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001).  The

14   Court finds that the deposition testimony offered by Wilson satisfies this rule.

15         Next, exhibits attached to affidavits must be properly identified and

16   authenticated.  *Jones v. Rabanco, Ltd.*, 439 F.Supp.2d 1149, 1159 (W.D. Wash.

17   2006).  However, it is in the court's discretion to "conduct an independent analysis

18   and admit into evidence certain documents containing a 'prima facia aura of

19   reliability,' even where they are not properly authenticated."  *Id*. The Court did

20   examine the challenged documents, but found they were of marginal consequence

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

to the Court's ultimate holding on the issues presented in this motion for summary

judgment.

**II. Age Discrimination**

Washington courts use a burden shifting analysis in cases alleging

employment discrimination under the Washington Law against Discrimination

("WLAD").  *Domingo v. Boeing Employees' Credit Union*, 124 Wash. App. 71, 77

(Ct. App. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

> Under this framework, the plaintiff has the initial burden of proving a prima facie case. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the defendant must present evidence that the plaintiff was terminated for a legitimate reason. The plaintiff must then show that the proffered reason is a pretext for discrimination. The plaintiff has the final burden of persuading the trier of fact that discrimination was a substantial factor in the termination decision.

*Domingo*, 124 Wash. App. at 77 (internal citations omitted).  Therefore, summary

judgment is proper if (1) the plaintiff cannot provide specific and material facts

supporting every element of the prima facie case, (2) plaintiff cannot provide

evidence that the defendant's actions were pretextual, or (3) if no rational trier of

fact could conclude that the action was discriminatory.  *Id.*  The Court will apply

the foregoing analysis to Wilson's claims of age discrimination and disparate

treatment.

The Washington Law against Discrimination ("WLAD") protects employees

age 40 and over from discrimination on the basis of age.  RCW 49.44.090(1).  "To

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

make out a prima facie case of age discrimination, an employee must show that: (1) she was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger person." *Balkenbush v. Ortho Biotech Prods.*, L.P., 653 F.Supp. 2d 1115, 1122 (E.D. Wash. 2009) (citing *Grimwood v. University of Puget Sound, Inc.*, 110 Wash.2d 355, 362 (1988)).  At the summary judgment stage a plaintiff's prima facie burden is minimal and "does not even rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  Neither party disputes that the first two elements are satisfied in this case.

### A. Replacement by a Younger Person

Under Washington law a plaintiff must prove that he or she was replaced by a younger person.  *Grimwood v. University of Puget Sound, Inc.*, 110 Wash.2d 355, 362 (1988).  The Supreme Court further held that

> the fact that an ADEA plaintiff was replaced by someone outside the class is not a proper element of the McDonnell Douglas prima facie case….[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion….' In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger…. The fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *see also Grimwood*, 110 Wash.2d at 362 ("[w]e note that these four factors are not

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

absolutes"). Failure to prove replacement by a substantially younger person is "not necessarily fatal" to an age discrimination claim when the employee's discharge is due to a general reduction in the work force. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990) (plaintiff may show "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination."). In a reduction in workforce situation, proof of replacement can be satisfied by showing a continuing need for plaintiff's services in that his job duties were still being performed. *See id.*; *see also Grimwood*, 110 Wash.2d at 363 (*quoting Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)).

Battelle argues Wilson does not meet his prima facie burden to establish this element because (1) his position was not officially "replaced" because F&O was so dissatisfied with Wilson's customer service on behalf of Battelle, and (2) Wilson's "ancillary duties" were assumed by employees who were not significantly younger than Wilson. ECF No. 45 at 6-7. It is undisputed that Wilson's job duties were passed to other employees, including: James Brown (age 31), Marcel Ballinger (age 54), Harold Tilden (age 57), Mike Silva (age 53), and Dan Edwards (age 44). ECF No. 45 at 7; ECF No. 81 at 5.

Wilson responds that the "average age" of these employees is 13 years younger than Wilson, which has been considered by courts to be "significant."

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1   ECF No. 78 at 25; s*ee Grosjean v. First Energy Corp.*, 349 F.3d 332, 336-39 (6th

2   Cir. 2003) (conducting a broad survey of other courts and finding that age

3   differences of 10 or more years are "generally" sufficient to meet this element of

4   an age discrimination prima facie case; and specifically noting that the Ninth

5   Circuit "has not settled on a standard for substantial age difference and its case law

6   is accordingly inconsistent."). Wilson also argues that his situation is analogous to

7   the reduction in workforce in *Rose v. Wells Fargo & Co.*, and contends that using

8   four employees to cover his workload is indicative of the continued need for his

9   services. ECF No. 78 at 25.

   As an initial matter, Wilson's argument that he was replaced with the

11  "equivalent" of someone younger due to the "average age" of the employees who

12  now perform his job duties is unsupported by case law and unpersuasive. Only one

13  of the five employees now responsible for covering Wilson's former job duties is

14  outside the protected class. Neither Wilson nor Battelle offer any evidence as to

15  what percentage of Wilson's former job duties are now being done by each of

16  these individuals.

   There is also no evidence in the record, nor does Battelle ever contend, that

18  Wilson's termination was due to a reduction in the workforce. Rather, Battelle

19  consistently claims that Wilson was terminated due to poor performance and

20  repeated complaints from the customers he served, without any reference to a

business necessity.  However, there is Ninth Circuit precedent to support Wilson's

argument that his situation is analogous to a reduction in workforce situation

because current employees assumed his duties instead of hiring a new employee to

replace Wilson.  *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994);

*see also Grimwood*, 110 Wash.2d at 363.  While Battelle contends that many of

Wilson's job duties no longer exist because the customer F&O was dissatisfied,

Battelle does admit that a portion of Wilson's duties were still being performed by

no less than five employees.  ECF No. 81 at 5.  Therefore, due to the minimal

burden required to establish a prima facie case, and in the light most favorable to

Wilson, the Court finds that he has met his burden to defeat summary judgment on

this issue.

**B. Satisfactory Work**

Battelle claims that Wilson cannot meet his prima facie burden to prove age

discrimination because Wilson was not doing satisfactory work at the time of his

discharge.  ECF No. 45 at 4.  However, Wilson offers several examples of

satisfactory work in 2010, despite an admittedly poor 2010 performance review by

///

///

///

///

1   his supervisor.[6] ECF No. 78 at 7.  These include: successfully implementing new

2   programs, meeting all deadlines in completing required reports, implementing new

3   recycling efforts at Battelle, 12 formal "walk-downs", a summary of "P2 Pays"

4   proposals.  ECF No. 78 at 7, 9.  Wilson also received 2 performance achievement

5   awards in June 2010.  ECF No. 78 at 10.  This evidence is enough for Wilson to

6   successfully establish a prima facie case of discrimination.

7        The burden now shifts to Battelle to rebut the inference of discrimination

8   and present evidence that Wilson was terminated for a legitimate reason.  *See*

9   *Domingo*, 124 Wash. App. at 77; *see also Grimwood*, 110 Wash.2d at 364 ("[t]he

10  employer's burden at this stage is not one of persuasion, but rather of production"

11  and it "need only articulate reasons sufficient to meet the prima facie case.")

12  Battelle offers a long list of "performance deficiencies" by Wilson, including but

13  not limited to: 1) incorrectly reporting requirements relating to Battelle's

14  Underground Storage Tank which resulted in incorrect reports to the Department

15  of Ecology for four months (Def. SMF at ¶ 9); 2) failing to support Building

16  Managers as they assumed responsibility for managing permits for their facilities

17  ──────────────

18  [6] Wilson also offers evidence of satisfactory work in years previous to the time of

19  his discharge. This evidence will not be considered by the Court as evidence of

20  satisfactory work at the time of his discharge.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1    (Def. SMF at ¶ 10-12); 3) failing to "fully engage" in operations of facilities he

2    was assigned to including understanding the permitting and regulatory

3    requirements (Def. SMF at ¶ 13, 27-29, 37); 4) dissatisfaction of F&O managers

4    with Wilson's performance (Def. SMF at ¶ 13-15, 23-31, 37, 43-46); 5) failing to

5    "actively engage" in or manage transition of 300 area buildings to the Physical

6    Science Facilities, rather than merely gathering data and preparing a checklist (Def.

7    SMF at ¶ 28); 7) inappropriately shifting work to his customers instead of

8    performing assignments (Def. SMF at ¶ 24-25, 29, 37). ECF No. 45 at 5.

9        Wilson was placed on a PIP in April of 2011, during which time his

10   performance was evaluated to determine if he was meeting his job expectations.

11   ECF No. 78 at 13-14.   Additionally, F&O Division manager Scott Allen, Building

12   Managers Jeff Rencken and Curt Nichols, and Facility Services Manager Reed

13   Sharp, expressed dissatisfaction with Wilson's job performance including his

14   failure to provide adequate customer support or perform the responsibilities of the

15   ECR. *Id.*

16       The Court finds that Battelle met its burden to rebut the inference of

17   discrimination by establishing legitimate non-discriminatory reasons for

18   terminating Wilson's employment.  The salient question for the Court is whether

19   Wilson can show that these examples of unsatisfactory work offered by Battelle

20   are pretext for a discriminatory purpose.  *Domingo*, 124 Wash. App. at 77.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

**C. Pretext**

An employee can show that an employer's stated reasons for termination are pretextual and unworthy of belief "with evidence that (1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate an adverse employment decision." *Chen v. State*, 86 Wash. App. 183, 190 (Ct. App. 1997). Pretext may also be demonstrated by evidence showing disparate treatment. *Domingo*, 124 Wash. App. at 88. Circumstantial or inferential evidence may be sufficient to establish pretextual motive, however, an employee's subjective beliefs about his performance is not relevant. *Hill v. BCTI Income Fund-I*, 144 Wash.2d 172, 190 n.14 (2001) *overruled on unrelated grounds by McClarty v. Totem Elec.*, 157 Wash.2d 214 (2006) ("courts must not be used as a forum for appealing lawful employment decisions simply because employees disagree with them."); *see also Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1038 (9th Cir. 2005) (circumstantial evidence must be both specific and substantial). If there is no evidence of pretext the defendant is entitled to dismissal as a matter of law, but if there is evidence of pretext than the case must go to the jury. *See Kastanis v. Educational Employees Credit Union*, 122 Wash.2d 483, 491 (1993).

Discriminatory statements can provide sufficient evidence of discrimination to survive summary judgment. *See Dominguez-Curry*, 424 F.3d at 1039 ("in [the

Ninth Circuit] we have repeatedly held that a single discriminatory comment by a plaintiff's supervisor or a decision-maker is sufficient to preclude summary judgment for the employer"); *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996) (reversing summary judgment in light of direct evidence of discriminatory intent when on three separate occasions plaintiff applicant was told that the board wanted someone younger for the job).  However, isolated or ambivalent "stray remarks" may not give rise to the inference of discriminatory intent.  *See Kirby v. City of Tacoma*, 124 Wash. App. 454, 467 (Ct. App. 2004) (affirming summary judgment and finding references to "old guard" and getting "grey haired old captains to leave" were 'stray remarks,' and insufficient evidence to establish that employers' reasons for promotions were pretext for discrimination); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747 (9th Cir. 2003) (remarks referring to "old management team", an "old business model" and "deadwood" did not support an inference of discriminatory intent).  "If workplace comments do not pertain to an individual's qualifications as an employee, they are 'stray remarks' that have no bearing on a claim for employment discrimination." *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wash. App. 438, 458 (Ct. App. 2005).

Wilson argues that Battelle's reasons for termination have no basis in fact because his work history both before and during his employment with Battelle was

1  "exemplary, shown in part by his quick advancement and service awards."[7]  ECF

2  No. 78 at 28.  Wilson relies heavily on the two service awards he received in 2010

3  to show that Battelle's claims that his work was unsatisfactory are pretextual, as

4  well as positive comments and satisfactory ratings in his 2008 and 2009 SDR.

5  ECF No. 78 at 30. However, Wilson offers no evidence to directly challenge the

6  validity of Battelle's stated reasons for terminating his employment, most notably,

7  the consistent dissatisfaction with his performance by some of the customers he

8  was tasked to support. Wilson does not deny that these customers were unsatisfied

9  with his performance, nor does he offer any evidence that the customers' feedback

10  was unfounded or motivated by discriminatory intent.  While the Court

11  acknowledges Wilson's receipt of positive performance reviews in previous years,

12  two service awards in 2010, and several emails indicating that he did good work;

13

14  [7] Both awards state "[y]our efforts and contributions in support of the vision and

15  mission of EHSS are greatly appreciated."  Schultz Decl., ECF No. 65, Ex. 20.

16  Battelle contends that the achievement awards were for participation on group

17  projects and not for individual performance.  ECF No. 81 at 9 n.4.  Also, Battelle

18  argues that Wilson's supervisors took these awards into account when rating

19  Wilson's performance in 2010 and resulted in an "Improvement Expected" as

20  opposed to a "Below Expectations" rating.  *Id.*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1    this record is not sufficient for the Court to find a complete lack of factual basis in

2    Battelle's assertions that Wilson's work was unsatisfactory on the whole in 2010.

3        Next, Wilson argues that even if there was some factual basis for the

4    discharge, Battelle was not actually motivated by those reasons.  In order to

5    establish pretextuality, Wilson first relies on allegedly disparate treatment of both

6    Tiffany Papineau and Harold Tilden.  Wilson alleges that he was reprimanded for

7    an incident with Papineau, while Papineau "received a positive performance

8    review."  ECF No. 78 at 29.  Wilson also claims that after narrowly avoiding a

9    Notice of Violation on an underground storage tank issue, he was "docked" on his

10   performance review, whereas his colleague Harold Tilden, who worked with him

11   on the project, was rated satisfactory.  *Id*. These arguments are unavailing. There is

12   no evidence in the record to establish that Tiffany Papineau or Harold Tilden was

13   "similarly situated," or that either was treated more favorably as a result of the

14   incident he recounts.  The Court must presume that the performance reviews of

15   these employees was based on the entirety of their work performance, and the

16   Court cannot extrapolate pretext for the decision to terminate Wilson based on any

17   form of disparate treatment not evidenced by the limited record on these incidents.

18       Last, and most convincingly, Wilson contends that the claims of poor

19   performance against Wilson were pretextual because they only arose after Battelle

20   "assumed a mission to remove older employees" shortly after he was hired.  ECF

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

No. 78 at 28.  Alice Ikenberry, former manager in Wilson's department testified that Eric Damberg had reservations about hiring Wilson and that HR was talking about "bringing in younger people."  Shultz Decl., ECF No. 63, Att. #1, Ex. 2 at (Ikenberry dep. I at 7).  Associate Lab Director of Operations and Chief Operations Officer Mike Schlendler commented that it was time to get "new blood" in the EHS team.  Schultz Decl., ECF No. 63, Att. #1, Ex. 3 (Grohs dep. at 19).  Roby Enge left his position as Director of EHS and testified that management was moving "old timers" out. [8]  Schultz Decl., ECF No. 63, Att. #1, Ex. 4 (Enge dep. at 43).  Alice Ikenberry, age 54, was told that she had been "on the job too long" and she was eventually terminated.  Ikenberry Decl., ECF No. 68, ¶ 4; Schultz Decl., ECF No. 63, Att. #1, Ex. 5.  Wilson testified that he was told by John Acres and

---

[8] The Court notes that Roby Enge did not use the term "old timers" himself, but responded in the affirmative to that terminology when used by counsel in a question during his deposition.  At oral argument, Battelle argued that the usage of "old timers" was more about the employees who had been around for a long time, instead of an age related comment.  The Court cannot evaluate the usage of this term because it was not provided with any context for this line of questioning in the deposition.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

Jean Gross "you are on the list."[9]  ECF No. 78 at 29. Wilson also alleges that Michael Stephenson remarked to Wilson that "he didn't realize you were that old;" and Eric Damberg told Wilson he had been "around for a long, long time." ECF No. 78 at 29.

      Summary judgment in favor of an employer in a discrimination case is often inappropriate because evidence commonly "contain[s] reasonable but competing inferences of both discrimination and nondiscrimination." *Kuyper v. State*, 79 Wash. App. 732, 739 (Ct. App. 1995).  The Court finds that this general policy holds true in this case.  Most particularly, the remarks made by management over the time that Wilson was employed at Battelle, several of them directly to Wilson, is sufficient evidence to create a reasonable inference of discriminatory intent, and for Wilson to sustain his burden to show pretextuality.  Genuine issues of material fact exist as to whether the age-related comments made by managers at Battelle, including Damberg and Stephenson, were temporally or substantively connected to the decision by Battelle to terminate Wilson's employment, or whether they were merely stray remarks.  It is for the trier of fact to weigh this evidence against the competing inference of non-discriminatory intent created by the same actor inference, as discussed in the next section.

//

---

[9] See footnote 4, supra.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

**D. Same Actor Inference**

"When someone is both hired and fired by the same decisionmakers within a relatively short period of time, there is a strong inference that he or she was not discharged because of any attribute the decisionmakers were aware of at the time of hiring." *Hill*, 144 Wash.2d at 189; *see also Griffith v. Schnitzer Steel Industries, Inc.*, 128 Wash. App. 438, 453 (Ct. App. 2005).  If there are multiple decisionmakers, it is only required that one of the decisionmakers involved in both the hiring and the firing be the same.  *See Griffith*, 128 Wash. App. at 454.  In *Griffith*, the court also found that the five year period still qualifies as a relatively short period of time.  *Id.*; *see also Buhrmaster v. Overnite Transp. Co.*, 61F.3d 461, 464 (6th Cir. 1995) ("to say that time weakens the same actor inference is not to say that it destroys it….Thus, a short period of time is not an essential element of the same actor inference, at least in cases where the plaintiff's class does not change.").  In order to prevail in these circumstances, an employee must answer the following question: "if the employer is opposed to employing persons with a certain attribute, why would the employer have hired such a person in the first place." *Hill*, 144 Wash.2d at 189-90.

Wilson was hired at age 57 and terminated four years later at age 61.  Eric Damberg was part of the committee that hired Wilson; and it is undisputed that Damberg was also a member of the committee that recommended Wilson's

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

termination.  ECF No. 81 at 15.  Wilson contends that he was actually hired by Ikenberry, and that Damberg, while "part of the team" that hired him, was actually opposed to hiring him.  ECF No. 78 at 37.  However, Ikenberry testified that it was ultimately Damberg's decision to hire Wilson.  Kennar Decl., ECF No. 48, Ex. H at 12-13, 15, 26, 34. Wilson's answer to why Damberg would have hired him in the first place if he was opposed to hiring people of his age, is that Damberg did express reservations about the aging workforce at Battelle at the time Wilson was hired.  However, despite any reservations, the operative fact is that Damberg did decide to hire Wilson even at the age of 57.

The Court acknowledges that the same actor inference in this case weighs against finding discriminatory intent because the same actor, Damberg, was a decision-maker involved in hiring and terminating Wilson.  These two acts took place within the relatively short time of four years, and while this amount of time does weaken the inference, it is once again bolstered by the fact that Wilson's class did not change. However, it is incumbent upon the Court to weigh this inference of non-discriminatory intent against the backdrop of a series of age related comments made at Battelle, and some of them to Wilson himself.  As discussed above, these remarks raise a competing inference of discriminatory intent. Thus, in the light most favorable to Wilson, the Court finds sufficient evidence, albeit slight, that genuine issues of material fact exist as to the age discrimination claim.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

## II. Disparate Treatment

To establish a prima facie case of disparate treatment, an employee must show "(1) he belongs to a protected class, (2) he was treated less favorably in the terms or conditions of employment (3) than a similarly situated, non-protected employee, and (4) he and non-protected 'comparator' employee were doing substantially the same work." *Johnson v. Dep't of Social & Health Servs.*, 80 Wash. App. 212, 227 (Ct. App. 1996). In other words, Wilson must show that the employer treated him less favorably because of his age. *See Domingo*, 124 Wash. App. at 81. Employees are "similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). If the evidence creates "reasonable but competing inferences of both discrimination and nondiscrimination" then it remains a fact question for the jury. *Johnson*, 80 Wash. App. at 229.

As outlined in the age discrimination section above, the court must apply the burden shifting analysis set forth by the Supreme Court. *See Domingo*, 124 Wash. App. at 77; *see also Fulton v. State, Dept. of Social and Health Services*, 279 P.3d 500, 507-508 (Ct. App. 2012) (court should submit case to jury only if determine that all three facets of the burden shifting analysis are met, otherwise summary judgment is appropriate). Ultimately, liability in a disparate treatment action "depends on whether the protected trait … actually motivated the employer's

decision." *Hegwine v. Longview Fibre Co., Inc.*, 162 Wash.2d 340, 354 n.7 (2007) (*quoting Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)).  There is no question that Wilson was in the protected class.  However, there is dispute as to whether the employees he identifies as treated more favorably were in the protected class, whether they were similarly situated, and whether they were doing substantially the same work.

Wilson offers three examples of disparate treatment.  ECF No. 78 at 34. First, Wilson contends that Papineau was "significantly younger", had "similar management", and both of them worked on the pollution prevention program; yet after their "incident" she received praise and an overall rating of "above expectation" while he received an "improvement expected."  *Id*.  Second, Wilson argues that unlike Wilson himself, Harold Tilden was not disciplined for his role in handling the underground storage tanks.  ECF No. 78 at 35.  Tilden was younger than Wilson and they both had "similar management jobs" and "worked on the same project."  *Id*.  Third, Wilson argues that his manager Stephenson failed to give him feedback on his SDR, which was different than Stephenson's conduct toward "younger employees" he supervised including John Akers, John Barnett, and Tom Moon.  *Id*.  Specifically, Wilson argues that Moon's receipt of an achievement award was acknowledged on his SDR, while Wilson's receipt of a similar award was not.  *Id*.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 29

First, Wilson has not, and in fact, cannot, demonstrate that these five employees are not in the protected class.  Akers (age 59), Moon (age 47), Barnett (age 46), and Tilden (age 57) are all over 40 years old, and they therefore are members of the protected class.  ECF No. 45 at 12.  There is no evidence in the record to establish whether or not Papineau was in the protected class. Second, Wilson has not sufficiently established that comparator employees were similarly situated to Wilson, and were doing substantially the same work.  Wilson was an ECR, unlike Moon and Barnett.  *Id*.  Moon is the Liquid Effluent Task Manager and never had complaints from building managers.  *Id*.  Barnett is the Radiological Task Lead and also never received negative feedback from his customers.  ECF No. 45 at 13.  Akers was an ECR but he served different customers.  ECF No. 45 at 12.  Tilden was a Senior Policy Advisor, not an ECR.  ECF No. 81 at 14.  Papineau was a P2Technician and an administrative support employee, not an ECR, and she did not support the same client (F&O) as Wilson.  *Id*.

Last, the Court finds that Wilson offered absolutely no evidence that he was treated less favorably than these five employees because of his age.  Even in the light most favorable to Wilson, he does not meet his minimal burden to establish a prima facie case of disparate treatment.

//

//

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30

**III. Justifiable Reliance / Implied Contract**

Under Washington's common law at-will employment doctrine, an employer may discharge an employee "for no cause, good cause or even cause morally wrong without fear of liability." *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 226 (1984). However, an employer's right to discharge an at-will employee can be contractually modified by employee handbooks or policy manuals. *See id.* at 228. Written materials may create a promise of specific treatment in specific situations, based on the equitable theory of justifiable reliance. *Quedado v. Boeing Co.*, 168 Wash. App. 363, 369 (Ct. App. 2012); *see also Thompson*, 102 Wash.2d at 230 ("[i]f an employer…creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.").

In order to establish an equitable theory of justifiable reliance, "the employee must prove (1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached." *Id.* An employer may not be bound by these statements if they "state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship, and are simply general

statements of company policy." *Thompson*, 102 Wash.2d at 231.  Whether an

employment document contains a promise of specific treatment in specific

situations, whether it was justifiably relied on, and whether the promise was

breached are questions of fact; but summary judgment may be appropriate if

reasonable minds could reach only one conclusion.  *See Burnside v. Simpson*

*Paper Co.*, 123 Wash.2d 93, 104-05 (1994).

Wilson testified that when he was hired he read the Battelle Standards of

Business Ethics and Conduct and agreed to abide by its standards.  ECF No. 78 at

40.  Also, Wilson read the Standards Base Management System ("SBMS"), which

outlined disciplinary procedures for management, including the Personal Action

Review Committee ("PARC").  *Id.*  Wilson contends that he relied on Battelle's

policies when performance issues were raised, but Battelle ignored its policies and

therefore breached an implied contract of specific promises in specific situations

concerning the PIP and PARC discipline.  *Id.*  Battelle responds that language in

Battelle's Policy Manual disclaims formation of any enforceable contract as

follows: "[t]hese policies do not create a contract between Battelle and any staff

member … Battelle reserves the right to modify, revoke, suspend, terminate, or

change any or all policies or procedures in whole or in part, at any time, with or

without notice."  Kennar Decl., ECF No. 48, Ex. J.  Moreover, Wilson testified that

1    he understood his employment was terminable at will, regardless of his

2    performance.  Kennar Decl., ECF No. 48, Ex. D, 18:9-15, 19:16-19.

3        **A. Performance Improvement Plan (PIP)**

4        The PIP issued to Wilson on April 20, 2011, stated "during this period of

5    performance through July 29, 2011, management will evaluate your work to

6    determine if expectations are being fully met."  Stephenson Decl., ECF No. 53, Ex.

7    B.  It also stated that "failure to improve your work performance and sustain a

8    high-quality level of effort may result in further disciplinary action, up to and

9    including your termination, *at any time during your evaluation period*."  *Id.*

10   (emphasis added).  Wilson was terminated on July 15, 2011. ECF No. 45 at 17.

11       Wilson contends that he asked for clarification regarding this termination

12   language and Stephenson "promised" that the July 29th date would be used to

13   evaluate his performance, and actually scheduled a meeting in late July to discuss

14   Wilson's performance.  ECF No. 78 at 42.  Wilson relies heavily on *Swanson v.*

15   *Liquid Air Corp.,* in which the court found that inconsistent employer

16   representations and practices, including oral assurances, can negate the effect of a

17   disclaimer.  118 Wash.2d 512, 532 (1992) (affirming denial of summary judgment

18   in wrongful termination claim because whether employee received reasonable

19   notice and effectiveness of disclaimer were issues of material fact).  Wilson claims

20   his case is analogous in that Stephenson made an oral "promise," and set up a

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33

meeting, thereby making a specific promise for a specific situation.  ECF No. 78 at 42.

This case is distinguishable from *Swanson*.  Wilson testified that Stephenson never made a promise to Wilson that he would not be terminated prior to July 29, 2011, nor is there any evidence that Wilson's supervisors made inconsistent representations that would negate the effect of the language in the PIP indicating that Wilson could be terminated at any time during the evaluation period.  Kennar Decl., ECF No. 86, Ex. P, 15:4-6.  In fact, Wilson's testimony reveals that Stephenson repeatedly echoed the language of the PIP, which stated that Wilson's performance would be evaluated on July 29, 2011.  Id. at 12:12-15:6. Moreover, the alleged "promise" by Stephenson came before the addendum to the PIP issued on June 6, 2011, which again included language that Wilson could be terminated at any time throughout the evaluation period.  Kennar Decl., ECF No. 86, Ex. P, 24:16-22.  The Court finds insufficient evidence in the record to establish that a promise of specific treatment was made to Wilson, that Wilson relied on a promise, or that the promise was breached by Battelle.

**B.  Personnel Action Review Committee (PARC)**

According to BMI policy a PARC is "an impartial committee … that reviews all involuntary personnel actions for fairness and consistency."  Schultz Decl., ECF No. 67, Ex. 50, p.412-13.  The "cognizant manager" presents the

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 34

recommendation and supporting facts to the PARC at which point the PARC

"reviews the information from the investigation or chronology of events; evaluates

the manager's recommended actions; concurs with the proposed action or proposes

an alternative action to be taken; and maintains a written record of the

proceedings." *Id.*

First, Wilson claims that he relied on the promise to receive an impartial

committee, but was not treated impartially, and "[t]he PARC was handled with

care to defame and terminate Wilson." ECF No. 78 at 43. The Court finds this

argument unavailing. Pursuant to Battelle policy, the PARC is "chaired by the

Director of Human Resources or delegate and includes the line management for the

cognizant organization, impartial line management, and subject matter experts, as

appropriate." *Id.* According to the PARC record in Wilson's case, the committee

who reviewed the relevant information was made up of Cameron Anderson

(Director of ES & H), Casey Pittman (Human Resources Consultant), Eric

Damberg, Michael Stephenson, Jim Blount (Human Resources Consultant), and

Mike Thompson (independent COO Level 2 Manager).[10] ECF No. 78 at 19; Def.

---

[10] Wilson notes that the individuals who "approved" his termination were Mike

Stephenson, Cameron Anderson, Casey Pittman, Jordan Vannoy and David

Maestas, as opposed to the PARC attendees who reviewed the information. ECF

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 35

1  SMF, ECF No. 46 at ¶ 49.  While it is true that the policy language includes the

2  word "impartial", there is no further definition of what "impartial" means.

3  Presumably, the inclusion of HR consultants and an "independent manager" is

4  meant to ensure that some members of the committee are not intimately familiar

5  with Wilson as an employee, and therefore more inclined to be impartial.

6  Regardless, there is no indication that Battelle policy made any specific promise to

7  include members on the PARC aside from those indicated in its policies.

8      Second, Wilson claims that the PARC did not follow proper procedure

9  because Wilson's "documented successes" were omitted from the PARC

10  information packet.  ECF No. 78 at 18-19; Shultz Decl., ECF No. 67, Ex. 49.

11  Battelle responds that there is no promise as to exactly what information must be

12  included in a "chronology of events," nor is there a promise that a manager

13  recommending termination is required to include items that Wilson himself viewed

14  as evidence of any purported success.  ECF No. 81 at 19.  Again, after a review of

15  Battelle policy, the Court finds no definition of "relevant" information, nor any

16  requirement that the PARC must review positive job performance.

17

18

19  No. 78 at 19.  Wilson makes no actual argument how that difference is relevant and

20  the Court discerns none.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 36

1    Third, Wilson appears to assert that there was some form of impropriety

2    because the record of the PARC proceeding continued to be "modified."  ECF No.

3    78 at 44. This argument is unavailing.  Wilson notes that one day after the PARC

4    met to discuss Wilson's termination, Pittman sent an email to Damberg and

5    Stephenson entitled "Revised Documents" labeled as "Chronology.doc, Final

6    Executive Summary.doc and Manager Notes.doc" and asked for edits.  ECF No. 78

7    at 19. Five days after the PARC met, Pittman sent another email with the subject

8    line "Final Documents" with attached documents labeled "Chronology.doc and

9    Final Executive Summaries.doc."  ECF No. 78 at 19-20.  Pittman identified the

10   documents as drafts from Wilson's PARC package and asked for "input in the

11   summary as to how job duties changed in 2010-2011, and how performance was

12   lacking – see highlighted area and feel free to add what I'm missing."  ECF No. 78

13   at 20.  Battelle responds that HR Consultant Casey Pittman made a few revisions to

14   the documents to remove unrelated items, and that no substantive changes were

15   made to the explanation for the termination decision or description of Wilson's

16   unsatisfactory job performance.  ECF No. 81 at 19; Pittman Decl., ECF No. 84 at ¶

17   3-4.  The Court finds no "promise" in Battelle policy that might bar editorial

18   revisions to PARC documents made after the proceeding took place.  ECF No. 81

19   at 19-20.   After careful review, the Court finds no genuine issue of material fact as

20

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 37

1    to whether Wilson was promised specific treatment in PARC policy or in the PIP,

2    or whether such alleged promises were breached.

3    **ACCORDINGLY, IT IS HEREBY ORDERED:**

4         Defendant's Motion for Summary Judgment, ECF No. 43, is **GRANTED** in

5    part and **DENIED** in part.  Defendant's motion for summary judgment as to

6    Plaintiff's age discrimination claim is **DENIED**.  Defendant's motion for summary

7    judgment as to Plaintiff's disparate treatment and implied contract is **GRANTED**

8    and these claims are hereby **DISMISSED.**

9         The District Court Executive is hereby directed to enter this Order and

10   provide copies to counsel.

11        **DATED** this 1st day of October, 2012.

12                    *s/ Thomas O. Rice*

13                THOMAS O. RICE
            United States District Judge

14

15

16

17

18

19

20

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 38